[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for breach of a settlement agreement and breach of fiduciary duty brought by the Executor of the estate of Eleanor Smith ("Efthimiou"") against Eleanor Smith's son, Richard Smith. The defendant, Richard Smith, has brought a counterclaim for breach of the same settlement agreement based on Eleanor Smith's failure to execute a Will.
 FINDINGS OF FACT
I. The Trusts.
The court makes the following findings of fact by a preponderance of the evidence.
Eleanor C. Smith and Hyman H. Smith had three sons: Richard, Bruce and Ronald. During his lifetime, Hyman accumulated real estate holdings in Connecticut, the management and ultimate disposition of which he provided for through two trusts, the H.H. and E.C. Smith Trust (the "Trust"), aninter vivos trust created by Eleanor and Hyman on May 10, 1979, and a testamentary trust (the "Testamentary Trust"), created pursuant to his Last Will and Testament ("Hyman's Will"). Eleanor held a 46.89 percent interest in the Trust, which she was free to dispose of upon her death as she wished. The other 53.11 percent interest in the Trust was held during his lifetime by Hyman, and after his death by the Testamentary Trust. CT Page 7377
The Testamentary Trust provided that Eleanor was to be its sole income beneficiary during her lifetime and gave her a limited power of appointment over the remainder. By the terms of the Testamentary Trust, Eleanor could appoint the remainder only to her three sons or their issue, but in whatever percentages she chose.
Upon Hyman's death in September 1979, Richard was named sole trustee of the Testamentary Trust. Richard and Bruce were named as co-trustees of the Trust from its inception in 1979.
After the death of Hyman in 1979 and prior to the Settlement Agreement of 1985, Eleanor had become the sole income beneficiary of the Trust, in part, directly, by operation of the terms of the Trust itself and in part, indirectly, by operation of her status as the sole income beneficiary of the Hyman H. Smith Testamentary Trust.
II. The Settlement Agreement
This case arises out of a financial settlement agreement (the "Settlement Agreement") entered into by members of the family of Hyman H. Smith ("Hyman") to resolve federal court litigation concerning the disposition of his estate. Ronald, in a lawsuit brought in Connecticut federal court in 1983 ("the Federal Court Lawsuit"), challenged the management of the Trust by Richard and Bruce. The Federal Court Lawsuit was settled pursuant to the terms of the Family Financial Settlement Agreement, which was dated May 2, 1985. It was signed by Eleanor, individually and as executrix of Hyman's estate, Richard, individually, as co-trustee of the Trust, and as trustee of the Testamentary Trust, Bruce, individually and as co-trustee of the Trust, and Ronald.
A. The Relevant Provisions.
The Settlement Agreement contains the following provisions that are relevant to the issues presented in this case.
The seventeenth "whereas" clause of the Settlement Agreement provides: "WHEREAS, in order to resolve such disputes and differences Richard B. Smith and Bruce A. Smith as co-trustees of, and Eleanor C. Smith as sole income beneficiary of the H.H. and E.C. Smith Trust desire to amend the May 10, 1979 trust agreement in certain respects hereafter set forth[.]"
Paragraph I of the Settlement Agreement provides: "The H.H. and E.C. Smith Trust shall be and is hereby amended, subject to the provisions contained herein, to include the following provisions which provisions shall be contained in a separate Trust document (which the affected parties agree to execute forthwith)." CT Page 7378
Section 1A of the Settlement Agreement provides: ". . . if the trustees act as hereafter specified without the prior approval of Eleanor C. Smith, she may discharge and replace said Trustee(s) who so act with a substitute individual trustee(s) of her own choice."
Paragraph 2A provides: "With respect to all acts hereunder where consent of Eleanor C. Smith is required. . . . Any notice required to be give to Eleanor C. Smith shall be deemed sufficient if made in writing and personally delivered or mailed . . . to Eleanor C. Smith at her then current residence address, with a copy to Gus Efthimiou, Jr., Esq. . . . or any other attorney of her choice."
Section 2D of the Settlement Agreement provides: "All rights granted hereunder (and throughout this agreement) to Eleanor C. Smith are strictly personal to her and shall not accrue to any fiduciary, assign or other person or entity."
Paragraph 3 provides in relevant part: "The trustees, shall, as requested, promptly provide to Eleanor C. Smith annual unaudited financial statements for the Trust. . . ."
Paragraph 4A provides: "The Trustees shall (monthly) pay over to Eleanor C. Smith as income beneficiary of the Hyman H. Smith testamentary trust and as income beneficiary of The H.H. And E.C. Smith Trust at an annual rate which together with income from the Hyman H. testamentary trust will equal or exceed $100,000."
Paragraph 4D of the Settlement Agreement provides: "Providing that they survive Eleanor C. Smith, Richard B. Smith and Bruce A. Smith are hereby, each to the extent of an undivided interest of 50 percent, irrevocably made the remainder men of The H.H. and E.C. Smith Trust; in the event of the death of either Richard B. Smith or Bruce A. Smith prior to the death of Eleanor C. Smith, the survivor shall be the sole remainder man of said Trust; unless Richard B. Smith and Bruce A. Smith shall both predecease Eleanor C. Smith, any interest of any other successor or assign of Eleanor C. Smith is hereby eliminated. If both Richard B. Smith and Bruce A. Smith shall predecease Eleanor C. Smith, then the interest of Richard B. Smith and Bruce A. Smith shall then be extinguished, the Trust shall be deemed terminated, and the assets of the Trust shall revert and be paid to Eleanor C. Smith."
The first sentence of Section 4E of the Settlement Agreement reads: "During their lives, Richard B. Smith and Bruce A. Smith are hereby made income beneficiaries of the Trust to the extent that each shall be entitled to receive income from the Trust equal to income received by CT Page 7379 Eleanor C. Smith in excess of $100,000. annually. . . ."
Paragraph 4E provides in relevant part: "Eleanor C. Smith, in addition to the other income of the Trust provided for, she shall be entitled to withdraw annually from the corpus of the Trust an amount of no more than 5 percent of the fair market value of the Trust Assets. . . ."
Paragraph 5 of the Settlement Agreement provides: "In the event of the death or legal incapacity or legal incompetency of either Richard B. Smith or Bruce A. Smith during the existence of the Trust, the surviving trustee shall be the sole trustee. . . ."
Paragraph 6A of the Settlement Agreement provides: "As used herein, Restricted Estate shall mean the Eleanor C. Smith's assets consisting of any direct or indirect, legal or beneficial interest in: any trust, real property and improvements thereon, (other than 238 Curtis Terrace, Fairfield, Connecticut), or of any existing financial obligation to her by Richard B. Smith and/or Bruce A. Smith or their successors or assigns, which she possesses as of the date hereof; specifically included are all present and prospective interests of Eleanor C. Smith in The H.H. and E.C. Smith Trust, The H.H. Smith Testamentary Trust, The H.H. and E.C. Smith Trust itself and the power of appointment made and provided by the Last Will and Testament of Hyman H. Smith, dated December 10, 1974. Specifically excluded from the `Restricted Estate' is [sic] the following:
1. The E.C. and R.K. Smith Trust.
2. Any and all bank accounts of Eleanor C. Smith whether checking or saving [sic] or cash on hand . . .
Unless the property and/or property rights of Eleanor C. Smith are expressly excluded herein above, they will be deemed to be part of the `Restricted Estate'."
Paragraph 6B of the Settlement Agreement provides: "Upon the death of Eleanor C. Smith, the Restricted Estate of Eleanor C. Smith, real, personal and mixed, of whatever nature and wherever situated, which she now owns, including the power of appointment, shall pass to, and/or be exercised in favor of, Richard B. Smith and Bruce A. Smith in equal undivided shares, or to the survivor of Richard B. Smith and Bruce A. Smith, but this obligation upon Eleanor C. Smith shall terminate if Richard B. Smith and Bruce A. Smith predecease her."
Section 6C of the Settlement Agreement provides: "Ronald K. Smith, in accepting the terms of this agreement, voluntarily disclaims his rights CT Page 7380 in and succession to any interest in The H.H. and E.C. Smith Trust, the Estate of Hyman H. Smith, the Hyman H. Smith testamentary trust and the aforesaid `Restricted Estate' in favor of his interest in the E.C. and R.K. Smith Trust."
Section 8 of the Settlement Agreement provides: "The termination date provided in the H.H. and E.C. Smith Trust is modified as may be necessary to carry out the purposes of this Agreement so that in no event shall it terminate during the lifetime of Eleanor C. Smith, and in no event shall it extend beyond 15 years of the lifetime of Eleanor C. Smith. The trustees shall have no obligation to extend the existence of the trust beyond the lifetime of Eleanor C. Smith."
Section 9 of the Settlement Agreement provides: "Except as otherwise provided in the agreement, Eleanor C. Smith shall be entitled to give, devise, bequeath and dispose of her estate as she shall determine except for the `Restricted Estate' as defined herein above [sic]. . . ."
Section 10 of the Settlement Agreement provides: "Eleanor C. Smith shall duly and promptly execute a last will and testament exbodying [sic] this Agreement to make a will, and after such execution shall not alter or revoke any of the provisions thereof which embody and/or fulfill the provisions of this Agreement without the written consent of all parties to this Agreement (excepting that Ronald K. Smith's consent shall not be required with respect to the provisions relating to the H.H. and E.C. Smith Trust). A true duplicate original copy of said last will and testament shall be provided promptly to Richard B. Smith and Bruce A. Smith, together with all codicils or replacements thereof which may be subsequently signed by Eleanor C. Smith. . . . This covenant to make a will shall be independent of all other covenants and undertakings contained in this Agreement and shall be independently enforceable, regardless of the claimed or actual invalidity or unenforceability of any other term or provision of this Agreement. . . .
2. If any provision of the will of Eleanor C. Smith is invalid or is held illegal or unenforceable then, notwithstanding any invalidity, illegality, or unenforceability of such provision, the remainder of the will shall subsist and shall be in full force and effect as though such invalid, illegal or unenforceable provision had been omitted from the will."
Paragraph 11 of the Settlement Agreement provides: "Simultaneously with the complete execution of this Agreement the co-trustees shall, from the assets of The H.H. and E.C. Smith Trust, transfer $1,000,000 in cash, in trust to Eleanor C. Smith and Ronald K. Smith, co-trustees of The E.C. and R.K. Smith Trust. CT Page 7381
A. $1,000,000. shall be paid in cash or cashier's check endorsed "for deposit only" to the E.C. and R.K. Smith Trust and delivered in trust to Ronald K. Smith at the time of complete execution of this agreement by all of the parties hereto.
Section 13 of the Settlement Agreement provides: "The H.H. and E.C. Smith Trust shall indemnify Ronald K. Smith individually and as trustee of the E.C. and R.K. Smith Trust, and shall hold him completely free and harmless from, attorneys' fees up to a maximum limit of $200,000.
Section 15 of the Settlement Agreement provides: "Each party hereto irrevocably assigns and hereby transfers to each other party hereto any property, benefit or asset whatsoever, direct or indirect, tangible or intangible, presently or hereafter received by him or her contrary to the terms and provisions of this Agreement, the assignment and transfer provided herein to consist of that which should have been received by each assignee and transferee had there been compliance with the mandates of this Agreement."
Section 18b. of the Settlement Agreement provides: "This Agreement represents the entire agreement of the parties with respect to the subject matter hereof and may not be changed or terminated orally but must be done, if at all, in writing signed by all of the interested parties (except as provided above in paragraph 10.A.)."
Section 18s. of the Settlement Agreement provides: "The terms and provisions of the H.H. and E.C. Smith Trust of 1979, to the extent they are not in conflict with the terms and provisions of this agreement shall remain in full force and effect, are incorporated herein by reference and are ratified and affirmed by the parties as if recited at length, this provisions shall apply to the E.C. and R.K. Smith Trust to the extent applicable. If the terms of this agreement shall be in conflict with the terms of the H.H. and E.C. Smith Trust of 1979, the provisions of this agreement shall control and supercede [sic]." Id.
Section 18u. of the Settlement Agreement provides: "If any acts occur which would be considered a material breach of this agreement, then the aggrieved party shall give written notice to said trustee(s). Said trustee(s) shall then have 30 days after such notice in which to fully cure said breach, in which event Eleanor C. Smith, if she is the aggrieved party, shall not have any right to replace or substitute said trustee(s). This provision shall not apply to acts of the trustees characterized by malice, fraud, or criminal misconduct."
Section 18v provides that: "Any and all sums payable under this CT Page 7382 agreement to Eleanor C. Smith shall be paid to her without prior notice or demand by her. At her request, the H.H. and E.C. Smith Trust shall establish a bank account on which she is the authorized signatory) and shall fund such account with $50,000.; the trustees shall then deposit any sums due hereunder into said account. . .
B. The Parties' Lack of Compliance with the Terms of the Agreement.
Accordingly, as part of the Settlement Agreement, Eleanor Smith promised to make a will in favor of her sons Richard B. Smith and Bruce A. Smith and to bequeath to Richard and Bruce all of her interest in the Trust and the Testamentary Trust, and to execute her power of appointment under Hyman's Will in favor of Richard and Bruce.
In exchange for this promise, Richard and Bruce agreed to the creation of a new inter vivos trust for the sole benefit of Eleanor and Ronald K. Smith ("Ronald") which would be funded with the payment of $1,000,000 from the Trust.
The new trust for the sole benefit of Eleanor and Ronald was created and a million dollars was transferred from the Trust to the new trust for Ronald and Eleanor. In addition, Richard and Bruce, as trustees of the Trust, agreed to provide a separate bank account, solely in Eleanor Smith's name, initially funded with fifty thousand dollars. The Settlement Agreement also provided that Eleanor would receive one hundred thousand dollars, prorated monthly, on an annual tax free basis. Additionally, Eleanor Smith was to receive annual distributions of five percent of the corpus of the Trust.
On or about July 9, 1985, only two months after the Settlement Agreement was signed, Eleanor Smith met with Gus Efthimiou, Jr., at which time she executed a continuing demand letter asking that the separate checking account be set up with the $50,000 deposit and that she receive period accountings pursuant to the terms of the Settlement Agreement. She also executed a letter in which she demanded that she receive 5% of the corpus of the trust annually.
On or about August 23, 1985, Mr. Efthimiou hand-delivered the July 9, 1985 letters to Richard and Bruce Smith in the presence of Eleanor. Richard Smith reacted by yelling at Eleanor that she would never see her grandchildren again and that she would not see him again unless it was in court.
No separate bank account was ever opened for Eleanor. There was also no credible evidence submitted that Eleanor ever received for her personal use the initial fifty thousand dollars, the one hundred thousand dollars CT Page 7383 annually and the 5% of the corpus of the Trust annually. Richard, as trustee of the Trust, was unable to provided any records evidencing payments to Eleanor.[1]
Eleanor Smith never executed a new Will. She told her attorney that she would not execute a new will because Richard and Bruce would not keep their promises. The will submitted to probate in her name in 1995 was instead one that predated the Settlement Agreement. It named Ronald as the sole beneficiary as to all property, including the property that was the subject of the 1985 Agreement. She bequeathed to Richard and Bruce the sum of one ($1.00) dollar each.
On January 24, 1996, the Probate Court for the District of Fairfield ordered Eleanor's Will admitted to probate and appointed Attorney Efthimiou as Executor of Eleanor's Estate. These rulings were affirmed on appeal to the Superior Court. The court concluded that the Settlement Agreement could not itself function as a will, but as only a contract to make a will.
III. The Trustees' handling of the Trust
The court makes the following findings of fact by clear and convincing evidence. The Trust came into existence on May 10, 1979. The purpose of the Trust was to turn over management of various pieces of commercial real estate to the Trustees, Richard and Bruce Smith.[2]
The value of the real estate at the inception of the Trust was approximately $1,500,000 and the mortgages on the property totaled approximately $731,000. As of January 1, 1986, the properties had been valued for internal purposes at approximately $12,000,000 and the mortgages totaled approximately $2,000,000. On or about May 30, 1986, Richard and Bruce Smith, acting as trustees, placed a mortgage for $2,100,000.00 on one of the pieces of property in the Trust, 540 New Haven Avenue, Milford, Connecticut. Three days later, on June 2, 1986, Richard and Bruce Smith, acting as Trustees of the H.H. and E.C. Smith Trust purchased real property at 1071 Post Road, Westport, Connecticut for the purchase price of $2,100,000.00.
On June 26, 1986, Richard A. Smith "as attorney for and Trustee" executed a quit claim deed which conveyed from the H.H. and E.C. Smith Trust the property at 1071 Post Road, Westport to the H.H. and E.C. Smith Trust for the life of Eleanor Smith and then to Richard and Bruce Smith individually and as tenants in common.
On September 9, 1986, Richard A. Smith and Bruce A. Smith as Trustees of the H.H. and E.C. Smith Trust mortgaged the real property at 1071 Post CT Page 7384 Road, Westport, Connecticut to First Federal Bank for $1,900,000.00. The same day the Trustees mortgaged the property at 540 New Haven Avenue, Milford, Connecticut from First Federal for $2,400,000.00
By mortgaging the property at 1071 Post Road, Westport for $1,900,000.00 and on the same day mortgaging the property at 540 New Haven Avenue, Milford, Connecticut for $2,400,000.00, the Trustees received $4,300,000.00 of mortgage proceeds. After deducting the price of the Westport property of $2,100,000.00, the Trustees received net mortgage proceeds of $2,200,000.00. Richard Smith, as trustee of the Trust, was unable to provide records of what happened to these proceeds.
Webster Bank instituted foreclosure proceedings on 1071 Post Road East, Westport, Connecticut on May 20, 1996. This property was ultimately lost in foreclosure.
By December 31, 1987, the value of the real estate in the Trust was listed at approximately $3,700,000 and the mortgages on the properties totaled approximately $4,200,000. The 1987 financial statement also reflects an asset listed as "due from beneficiary" in the amount of $2,909,313. This "asset" constitutes excess distribution over the income to the Trust to some person or entity. Richard Smith, as trustee and record keeper for the Trust, could not account for this money.
On February 1, 1988, Richard and Bruce Smith, acting as trustees placed a $750,000 mortgage on another piece of Trust property, 1602 Boston Post Road, Milford, Connecticut. Ultimately, this property at 1602 Boston Post Road, was sold in lieu of foreclosure on September 3, 1996.
Richard and Bruce Smith, acting as trustees, placed the following mortgages on another piece of Trust property, 65-145 Furniture Row, Milford, Connecticut: $1,000,000 mortgage Colonial Bank; $1,250,000 mortgage First Federal Bank (now known as Webster Bank); $2,250,000 mortgage First Federal Bank; $1,500,000 mortgage Bank of Boston; and $4,500,000 mortgage All American Life Insurance. Ultimately, this property was lost in foreclosure on December 31, 1996 to All American Life Insurance.
Richard and Bruce Smith, acting as trustees, also placed a $500,000 mortgage on 20 Furniture Row, Milford, Connecticut from Bank of New Haven.
Finally, Richard Smith and Bruce Smith allowed Eleanor Smith to place a $200,000. mortgage on 238 Curtis Terrace, on July 19, 1990. The proceeds were placed in the Trust. 238 Curtis Terrace, Fairfield, Connecticut was Eleanor Smith's family home, that she owned, individually; free and clear CT Page 7385 of encumbrances. This property was ultimately foreclosed on in 1996.
The 1994 financial statement for the Trust reflects the properties' value at $4,509,681 and the mortgages payable at $8,482,869.[3]
The Trust, during the period 1985-1994, incurred expenses of between $700,000 and $900,000 on account of Hyman Smith's estate taxes. The Trust, during the period 1985-1994, incurred expenses of between $400,000 and $600,000 in pollution remediation expenses.
By 1994 the "asset" listed as "Due from beneficiary" which was an excess distribution to some entity or person by the Trust had ballooned to approximately $5,628,100. This distribution still could not be accounted for by Richard Smith.
In sum, between 1985 and 1994, Richard put mortgages on all of the properties in the Trust. As of 2002, the only property that has not been foreclosed upon, lost in legal proceedings, or sold in lieu of foreclosure is located at 20 Furniture Row. It is currently valued at approximately $250,000 without taking into account liens and pollution problems. The Trust has minimal cash funds.
C. Loans to NEIT Trust.
New England Investment Trust (NEIT) is an entity that was created and operated by Richard and Bruce Smith. Richard and Bruce Smith, as trustees, of the H.H. E.C. Smith Trust loaned $2,389,150.00 to New England Investment Trust. Richard Smith also acted as the trustee of the New England Investment Trust in obtaining these unsecured loans from the H.H. and E.C. Smith Trust. The New England Investment Trust was supposed to be an investment vehicle for the H.H. and E.C. Smith Trust. Richard Smith never received a written consent from Eleanor to use the Trust funds for this purpose. Richard Smith also never sought or received permission from the Probate Court to make loans on behalf of H.H. and E.C. Smith Trust to NEIT.
NEIT participated in a series of transactions, including making loans directly to Richard Smith and Bruce Smith in the amount of $388,203.17 and $273,000 respectively. The NEIT trust also loaned to Westport Equities the amount of $383,763.20. Westport Equities, Inc. was a corporation formed by Richard and Bruce Smith to invest Trust monies in the stock market. Eleanor Smith never consented in writing to the Trust indirectly making loans to Richard and Bruce or making loans to their corporation, Westport Equities.
The four investment entities, NEIT, Westport Equities, Richard Smith CT Page 7386 and Bruce Smith individually invested in risky positions in the market. The Trust financial statement of December 31, 1994 reflects an outstanding balance on the loan receivable from NEIT to the Trust in the approximate amount of $1.8 million. Richard Smith testified that the monies loaned to NEIT could have come from mortgages placed on the properties at 65-145 Furniture Row and 540-550 New Haven Avenue, Milford, as well as 1071 Post Road East, Westport. No interest on the loans from the H.H. and E.C. Smith Trust to NEIT was ever paid or reported.
D. The Westville Trust.
On or about. April 21, 1993, Richard Smith established the Westville Trust with his then wife, Jody Smith, acting as Trustee. Upon the death of Eleanor Smith on February 19, 1994, a portion of the proceeds of her life insurance in the approximate amount of $450,000.00 was transferred to the Westville Trust.
On January 12, 1995 through September 19, 1995, Richard Smith, as Trustee of the H.H. E.C. Smith Trust, borrowed the principal sum of $407,250.00 from the Westville Trust. These loans were evidenced in a series of sixteen (16) unsecured promissory notes from The H.H. and E.C. Trust to the Westville Trust. No payment was made by the Trust on any of the sixteen (16) notes. The loans were not repaid because the Trust lacked the cash to repay them.
On October 16, 1996, Jody Smith, as Trustee of the Westville Trust, brought an action against Richard B. Smith Trustee of the Hyman H. Smith and Eleanor C. Smith Trust to collect the sixteen (16) loans. As part of this action, Jody Smith secured a real estate attachment on four parcels of Trust land including the entire parcel of land at 540 and 550 New Haven Avenue, Milford.
Richard Smith did not contest this action because the Trust did not have any defense, and on December 16, 1996, the Superior Court for the Judicial District of Fairfield, defaulted the H.H. and E.C. Smith Trust for failure to disclose a defense.
On March 6, 1997, the Westville Trust secured a judgment in the amount of $407,250.00 in damages, $72,745.94 in interest, $2,115.00 in attorneys' fees and $467.40 in costs against the H.H. and E.C. Smith Trust.
Jody and Richard were divorced in November of 1997.
On February 16, 1998, Jody caused Vorlon Holding LLC to be formed and on March 4, 1998, she assigned the judgment lien on the Trust property to CT Page 7387 Vorlon. From January, 1998 through June, 1998, in anticipation of Vorlon taking title to the property, Jody Smith advanced monies to fund the renovation of 540 New Haven Avenue for the construction of self-storage units. Jody Smith drew multiple checks on her personal checking account in the total amount of approximately $500,000.00. Richard Smith worked as a general contractor for Vorlon Holdings, LLC and Deep Space 1, LLC, another limited liability company of which Jody Smith is the only member, in the construction and management of the self storage facility, Easy Access Storage. Deep Space 1, doing business as Easy Access Storage or Access Storage opened its doors to the public on June 29, 1998.
One month later, on July 24, 1998, Jody Smith, acting as Trustee of the Westville Trust and as a member of Vorlon Holding, LLC, entered into a settlement agreement with Richard B. Smith, Trustee of the H.H. and E.C. Smith Trust, in connection with the judgment obtained by the Westville Trust. She negotiated and compromised the judgment lien by agreeing to take title to only two of the four liened parcels. By the terms of the Settlement Agreement of July 24, 1998, the H.H. and E.C. Smith Trust conveyed the property located at 540 and 550 New Haven Avenue, Milford, Connecticut to Vorlon. Vorlon Holdings, L.L.C. also received title to 15 Old Gate Lane, Milford, Connecticut in satisfaction of this judgment lien.[4]
Jody Smith or her companies currently derive net income of approximately $70,000 to $80,000 per year.
Richard B. Smith presently resides at 550 New Haven Avenue. He receives use of the property and does work for Easy Access Self Storage in lieu of paying rent.
 Discussion of Law
I. Breach of the Settlement Agreement
Both the plaintiff, Efthimiou, as executor of Eleanor's estate, and the Defendant, Richard Smith, have brought claims for breach of the Settlement Agreement. Specifically, plaintiff claims that Richard failed to provide Eleanor with a separate bank account of her own and that he failed to deposit into this account an initial $50,000 and then $100,000 annually thereafter. In addition, he claims that Eleanor was not given 5% of the corpus trust annually as demanded by her beginning in August of 1985. Richard Smith counterclaims that Eleanor failed to execute a new will that would have left all of her interest in the Trust to him.
Plaintiff has demonstrated by a preponderance of the evidence that Richard failed to fulfill his obligations under the Settlement Agreement CT Page 7388 to his mother.
"A contract is to be construed as a whole and all relevant provisions . . . considered together . . ." (internal quotation marks omitted). HLOLand Ownership Associates Ltd. Partnership v. Hartford, 248 Conn. 350,356 (1999). "Every provision . . . must be given effect if it can reasonably be done, because parties do not ordinarily insert meaningless provisions in their agreements." (Internal quotation marks omitted.)Plikus v. Connecticut Light and Power Co., 42 Conn. App. 299, 303
(1996). "Our Supreme Court has frowned on interpreting a contract in a way that renders a clause in the contract mere surplusage and inoperative." Patron v. Konover, 35 Conn. App. 504, 518, cert. denied,231 Conn. 929 (1994). "In interpreting contract items the language used must be accorded its common, natural, and ordinary meaning and usage . . ." (Internal quotation marks omitted.) HLO Land Ownership AssociatesLtd. v. Hartford, supra, 248 Conn. 357.
Section 18v of the Settlement Agreement clearly provided that Eleanor was to have her own bank account and that it was to be funded with substantial and regular disbursements from the Trust. Given the history of feuding among her children regarding money, it is no surprise that she wanted the independence of her own bank account and her own private source of funds. The court finds that these provisions were a material obligation under the contract.[5] In this regard, "[t]he standard of materiality must be applied in the light of the facts of each case in such a way as to further the purpose of securing for each party his expectation of an exchange of performances." 669 Atlantic StreetAssociates v. Atlantic-Rockland Stamford Associates, 43 Conn. App. 113,128 (1996). "A material as opposed to incidental breach of contract has been aptly described as one that is `so important that it vitiates or destroys the entire purpose for entering into the contract.'" CarlyleJohnson Machine Co., LLC v. April, 2000 WL 234311 (February 10, 2000) (Shortall, J.), quoting A. Prete Son Construction v. Madison, Superior Court., J.D. of New Haven at New Haven, Docket No. 3103073 (October 4, 1994) (Healey, J.). Here the failure to set up the $50,000 checking account and to fund it as provided under the Agreement was material.
The court also finds that Eleanor was unwilling to execute a new will because she did not believe that Richard was going to fulfill his obligations to her under the Settlement Agreement. She was correct in this belief. Although she lived for nine years after the Settlement Agreement was signed, Richard never opened a separate account for her and he never funded it.
Defendant, Richard, has also proven by a preponderance of the evidence his counterclaim that Eleanor failed to fulfill her obligation to execute CT Page 7389 a new Will consistent with the terms of the Settlement Agreement. This was also a material obligation under the Settlement Agreement.
Richard's testimony that he never checked to see if she executed a new Will and that he did not want to bother his mother about this was not credible. He was entitled to a copy of the Will upon its execution under the terms of the Settlement Agreement. Richard and his brother Ronald had fought for years over money and it was only after federal litigation was instituted that the parties entered into the Settlement Agreement which was supposed to resolve once and for all these financial issues. Instead, the court finds that Richard believed that his mother was not going to fulfill her obligation under the Agreement to execute a new Will. In fact, he testified that he believed a Will would have been of no consequence because Eleanor could have changed it. Additionally, it is clear from Richard's conduct that he did what he could to make sure that some assets that were initially funded by Trust money passed to him outside of the Trust. Examples of this conduct include the Westport property, which if it had not been foreclosed upon, would have passed directly to him outside of the Trust upon Eleanor's death. Likewise, he personally received funds that had been loaned from the Trust to the NEIT Trust for his personal investment.
In sum, both Eleanor and Richard were unwilling to perform their obligations under the Settlement Agreement. Unlike some cases where the issue for the court to decide is which party materially breached first, the court does not believe that would be appropriate here for several reasons. First, the Settlement Agreement did not address whether the Will was to be executed before the bank account for Eleanor was opened and initially funded.[6]
More importantly, the question of which party breached first appears to be immaterial. Where both parties to a contract are prospectively unwilling to perform ". . . to a degree that the return performance otherwise owed would be excused, so that both have, in effect, repudiated the contract, neither party can recover from the other. In such a case, the order in which the performances were due by the terms of the contract is wholly immaterial." see 15 Williston, Contracts § 43:31 (4th
ed. 2000).
This is a case where both parties are in mutual breach of the Settlement Agreement and therefore are not entitled to recover damages. ". . . [c]ourts have held that in some instances where both parties are at fault (or in default) neither may recover. . . . whether this doctrine is described as failure of consideration, failure to satisfy a condition precedent, or mutual breach of contract, it is clear that in proper circumstances a court may refuse to allow recovery to either party to an CT Page 7390 agreement because of their mutual fault, which in contract terms might be more properly described as mutual default." (Citations omitted).Westinghouse Electric Corp. v. Garrett Corp., 601 F.2d 155 (4th Cir. 1979). See also, Restatement (Second) of Contracts § 244.
Additionally, it is well-settled Connecticut law that "[o]ne cannot recover upon a contract unless he has fully performed his own obligation under it, has tendered performance or has some legal excuse for not performing." Automobile Insurance Co. v. Model Family Laundries, Inc.,133 Conn. 433, 437 (1947). Finally, mutual assent to abandon an agreement can be inferred from attendant circumstances and conduct of the parties.Jazlowiecki v. Nicoletti, 34 Conn. Sup. 670, 672 (1970).
The circumstances of this case demonstrate that because of a mutual distrust between mother and son, both were unwilling to perform their obligations under the Settlement Agreement. Accordingly, the court finds that both the plaintiff and the defendant are not entitled to recover on their claims for breach of the Settlement Agreement.[7]
II. Breach of Fiduciary Duties based on the Trust.
The sole remaining claim is whether the defendant, Richard Smith, breached his fiduciary duty under the Trust.[8]
As trustees of the Trust, Richard and Bruce had a fiduciary relationship with Eleanor who was the sole beneficiary under the Trust. Such a relationship exists where there is "a justifiable trust confided in one side and a resulting superiority and influence on the other."Dunham v. Dunham, 204 Conn. 303, 320 (1987). As trustees of the Trust, Richard Smith and Bruce Smith were required to manage the trust assets so as to protect the interests of the beneficiary (Eleanor) by guarding the trust res. New Haven Savings Bank v. LaPlace, 66 Conn. App. 1, 9 (2001). "Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence." (Citations omitted) Dunhamv. Dunham, supra, 204 Conn. 322.
Applying these standards in this case, the court concludes that the defendant Richard Smith breached his fiduciary duty when he loaned money to himself, his brother and a corporation formed by he and his brother for investment purposes in the stock market. "Our Supreme Court has stated that "[i]t is a thoroughly well-settled equitable rule that any one acting in a fiduciary relation shall not be permitted to make use of CT Page 7391 that relation to benefit his own personal interest. This rule is strict in its requirements and in its operation. It extends to all transactions where the individual's personal interests may be brought into conflict with his acts in the fiduciary capacity, and it works independently of the question whether there was fraud or whether there was good intention. . . ." Spector v. Konover, 57 Conn. App. 121,127 (2000).
Richard's misuse of Trust funds is a clear case of self-dealing and a misuse of his fiduciary responsibility. Richard acted as both the trustee of the Trust in loaning the funds and the trustee of the NEIT Trust in borrowing the funds. He then proceeded to personally borrow funds from the NEIT Trust. This was all done without any written consent from Eleanor. Richard did nothing to protect the Trust such as provide for interest payments. Finally, Richard, who had the burden of proving by clear and convincing evidence that this transaction constituted fair dealing, never presented evidence or attempted to present evidence of repayment.[9] Oakhill Associates v. D'Amato, 228 Conn. 723, 727-9, n. 3 (1994).
In addition, as sole trustee of the Trust, Richard breached his fiduciary duty by not being able to credibly account for the $5,628,100. that was borrowed by someone or some entity and due to the Trust. When questioned during trial, Richard repeatedly stated that he did not know what this category was even though his accountant testified that Richard and Bruce supplied the financial information used for the yearly financial statement. He was also unable to provide any records explaining the disbursement of these funds that came out of the Trust.
A statute of limitations defense is not available for these two breaches of fiduciary duty by Richard. Both the loans to and through NEIT and the unexplained "due from beneficiary" funds constituted continuing courses of conduct that continued to occur after August 13, 1993. The Complaint was filed on August 13, 1996 and was therefore timely.[10]
With regard to the real estate transactions which ultimately resulted in almost all of the property being foreclosed upon, the court finds that there was no breach of fiduciary duty. "The law governing the duties of a trustee respecting investment of trust assets is well settled. Generally, a trustee must act with the care of a prudent investor A trustee is neither the insurer nor the guarantor of the value of a trust's assets. A trustee's performance is not judged by success or failure, and while negligence may result in liability, a mere error in judgment will not." United States Trust Co. v. Bohart, 197 Conn. 34, 48
(1985). CT Page 7392
With respect to the mortgaging of Trust properties during the time frame between May 2, 1985 and February 19, 1994, the evidence established that there were some refinancings of existing mortgages which resulted in the release of prior encumbrances. It is a common practice in the management of commercial real estate to refinance mortgages and/or take out new mortgages for legitimate purposes (e.g. repairs, pollution expenses, better interest rates, and the like). In connection with the management of this particular Trust, there were some additional expenses that required financing, such as estate taxes owed by the Estate of Hyman Smith and the funding of the E.C. R.K. Smith Trust under the 1985 Agreement.
In addition, there was a decline in the commercial real estate market from a peak in approximately 1986 up to and including the date of Eleanor Smith's death in 1994. In addition, Mrs. Smith discussed business issues with Bruce and Richard Smith during the relevant time period. Finally, Eleanor consented in writing to the remortgaging and purchasing of property in the Trust.
The court also specifically finds that the transaction involving the Westville trust did not constitute a breach of Richard's fiduciary duty. In order to manage the real estate in the Trust Richard needed to perform maintenance work on the properties and needed to borrow money in order to do so. In doing so he was acting with prudent care in trying to protect the res of the Trust. Additionally, the court finds that there was no breach of fiduciary duty in his subsequent settlement of the notes case with Vorlon given the Trust had no legitimate defense and only two of the four liened Trust properties were ultimately transferred to Vorlon as part of the settlement.
II Remedy for Breach of Fiduciary Duty
"A trustee who commits a breach of trust is. . . . (b) chargeable with the amount required to restore the values of the trust estate and trust distributions to what they would have been if the trust had been properly administered. In addition, the trustee is subject to such liability as necessary to prevent the trustee from benefitting personally from the breach of trust." Restatement (3rd) of Trusts § 205. Judgment shall enter against the defendant in the amount of $5,173,066.00 plus costs which constitutes damages in the amount of $1,044,966.00 for the improper loans to Richard, Bruce and Westport Equities, while Richard was acting as trustee of the Trust, and damages for the $5,628,100.00 in trust funds that Richard cannot account for minus the $1,500,000.00 (for estate taxes and remediation costs) he demonstrated to be legitimate costs to the Trust. Oakhill, supra at 527-9.[11]
CT Page 7393
_______________________ CHASE T. ROGERS SUPERIOR COURT JUDGE